# ARMCO INC. *v.* HARDESTY, TAX COMMISSIONER OF WEST VIRGINIA

No. 83–297.   Argued April 17, 1984—Decided June 12, 1984

*Richard R. Dailey* argued the cause for appellant. With him on the briefs were *Edward H. Hein* and *Michael J. Rufkahr*.

*Robert Digges, Jr.*, Assistant Attorney General of West Virginia, argued the cause for appellee. With him on the brief were *Chauncey H. Browning*, Attorney General, and *Jack C. McClung*, Deputy Attorney General.*

JUSTICE POWELL delivered the opinion of the Court.

In this appeal an Ohio corporation claims that West Virginia's wholesale gross receipts tax, from which local manufacturers are exempt, unconstitutionally discriminates against interstate commerce. We agree and reverse the state court's judgment upholding the tax.

I

Appellant Armco Inc. is an Ohio corporation qualified to do business in West Virginia. Its primary business is manufacturing and selling steel products. From 1970 through 1975, the time at issue here, Armco conducted business in West Virginia through five divisions or subdivisions. Two of these had facilities and employees in the State, while the other

---

*Briefs of *amici curiae* urging affirmance were filed for the State of Washington by *Kenneth O. Eikenberry*, Attorney General, and *Leland T. Johnson* and *Timothy R. Malone*, Assistant Attorneys General; and for the National Conference of State Legislatures et al. by *Lawrence R. Velvel, Elaine D. Kaplan,* and *Stefan F. Tucker.*

three sold various products to customers in the State only through franchisees or nonresident traveling salesmen.[1]

West Virginia imposes a gross receipts tax on persons engaged in the business of selling tangible property at wholesale. W. Va. Code § 11–13–2c (1983).[2] For the years 1970 through 1975 Armco took the position that the gross receipts tax could not be imposed on the sales it made through franchisees and nonresident salesmen. In addition, because local manufacturers were exempt from the tax, see § 11–13–2,[3] Armco argued that the tax discriminated against interstate

---

[1] The company's Mining Division mined, cleaned, and sold coal in the State, and part of the Metal Products Division sold various construction and drainage products through an office in the State staffed by three employees. The Metal Products Division's metal buildings were sold in the State exclusively by two franchised dealers resident in the State. The Steel Group and the Union Wire Rope Group had no office in West Virginia but sold steel and wire rope through nonresident traveling salesmen who solicited sales from customers in the State.

[2] For the years 1971 through 1975, § 11–13–2c provided, in relevant part:

"Upon every person engaging or continuing within this state in the business of selling any tangible property whatsoever, real or personal, . . . there is . . . hereby levied, and shall be collected, a tax equivalent to fifty-five one-hundredths of one percent of the gross income of the business, except that in the business of selling at wholesale the tax shall be equal to twenty-seven one-hundredths of one percent of the gross income of the business." 1971 W. Va. Acts, ch. 169.

The tax on wholesale gross receipts was 0.25% prior to 1971. 1959 W. Va. Acts, ch. 167.

[3] West Virginia Code § 11–13–2 (1983) provides an exemption for persons engaged in the State in manufacturing or in extracting natural resources, and selling their products. For the years at issue here, it read as follows, in relevant part:

"[A]ny person exercising any privilege taxable under sections two-a [extracting and producing natural resources for sale] or two-b [manufacturing] of this article and engaging in the business of selling his natural resources or manufactured products . . . to producers of natural resources, manufacturers, wholesalers, jobbers, retailers or commercial consumers for use or consumption in the purchaser's business shall not be required to pay the tax imposed in section two-c [§ 11–13–2c] of this article." 1955 W. Va. Acts, ch. 165, § 2; 1971 W. Va. Acts, ch. 169.

commerce. After a hearing, the State Tax Commissioner, who is appellee here, determined that the tax was properly assessed on the sales at issue, and that Armco had not shown the tax was discriminatory.[4] The Circuit Court of Kanawha County reversed, holding that the nexus between the sales and the State was insufficient to support imposition of the tax.

The West Virginia Supreme Court of Appeals reversed the Circuit Court and upheld the tax. —— W. Va. ——, 303 S. E. 2d 706 (1983). Viewing all of Armco's activities in the State as a "unitary business," the court held that the taxpayer had a substantial nexus with the State and that the taxpayer's total tax was fairly related to the services and benefits provided to Armco by the State. *Id.*, at ——, ——, 303 S. E. 2d, at 714, 716. It also held that the tax did not discriminate against interstate commerce; while local manufacturers making sales in the State were exempt from the gross receipts tax, they paid a much higher manufacturing tax.[5] *Id.*, at ——, ——, 303 S. E. 2d, at 716–717.

We noted probable jurisdiction, 464 U. S. 1016 (1983), and now reverse. Since we hold that West Virginia's tax does discriminate unconstitutionally against interstate commerce, we do not reach Armco's argument that there was not a sufficient nexus between the State and the sales at issue here to permit taxation of them.

---

[4] The Commissioner waived statutory penalties on the disputed amount because he found that Armco's objections were a "good faith effort to interpret a substantial question of law." App. to Juris. Statement 49a.

[5] West Virginia Code § 11–13–2b (1983) imposes a manufacturing tax of 0.88% on the value of products manufactured in the State. The value of the product is measured by the gross proceeds derived from its sale. If the product is manufactured in part out of State, the sale price is multiplied by that portion of the manufacturer's payroll costs or total costs attributable to West Virginia. As relevant here, the tax is imposed on "every person engaging or continuing within this state in the business of manufacturing, compounding or preparing for sale, profit, or commercial use, . . . any article . . . substance or . . . commodity." Prior to 1971, the tax rate was 0.8%. 1967 W. Va. Acts, ch. 188; see 1971 W. Va. Acts, ch. 169.

## II

It long has been established that the Commerce Clause of its own force protects free trade among the States. *Boston Stock Exchange* v. *State Tax Comm'n*, 429 U. S. 318, 328 (1977); *Freeman* v. *Hewit*, 329 U. S. 249, 252 (1946). One aspect of this protection is that a State "may not discriminate between transactions on the basis of some interstate element." *Boston Stock Exchange, supra,* at 332, n. 12. That is, a State may not tax a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State.

On its face, the gross receipts tax at issue here appears to have just this effect. The tax provides that two companies selling tangible property at wholesale in West Virginia will be treated differently depending on whether the taxpayer conducts manufacturing in the State or out of it. Thus, if the property was manufactured in the State, no tax on the sale is imposed. If the property was manufactured out of the State and imported for sale, a tax of 0.27% is imposed on the sale price. See *General Motors Corp.* v. *Washington*, 377 U. S. 436, 459 (1964) (Goldberg, J., dissenting) (similar provision in Washington, "on its face, discriminated against interstate wholesale sales to Washington purchasers for it exempted the intrastate sales of locally made products while taxing the competing sales of interstate sellers"); *Columbia Steel Co.* v. *State*, 30 Wash. 2d 658, 664, 192 P. 2d 976, 979 (1948) (invalidating Washington tax).

The court below was of the view that no such discrimination in favor of local, intrastate commerce occurred because taxpayers manufacturing in the State were subject to a far higher tax of 0.88% of the sale price. This view is mistaken. The gross sales tax imposed on Armco cannot be deemed a "compensating tax" for the manufacturing tax imposed on its West Virginia competitors. In *Maryland* v. *Louisiana*, 451 U. S. 725, 758–759 (1981), the Court refused to consider a tax on the first use in Louisiana of gas brought in from out of

State to be a complement of a severance tax in the same amount imposed on gas produced in the State. Severance and first use or processing were not "substantially equivalent event[s]" on which compensating taxes might be imposed. *Id.*, at 759. Here, too, manufacturing and wholesaling are not "substantially equivalent events" such that the heavy tax on in-state manufacturers can be said to compensate for the admittedly lighter burden placed on wholesalers from out of State. Manufacturing frequently entails selling in the State, but we cannot say which portion of the manufacturing tax is attributable to manufacturing, and which portion to sales.[6] The fact that the manufacturing tax is not reduced when a West Virginia manufacturer sells its goods out of State, and that it is reduced when part of the manufacturing takes place out of State, makes clear that the manufacturing tax is just that, and not in part a proxy for the gross receipts tax imposed on Armco and other sellers from other States.[7]

---

[6] One would expect that a manufacturing tax might be larger than a gross receipts tax since an in-state manufacturer normally benefits to a greater extent from services provided by the State than does a transient wholesaler. Cf. *Complete Auto Transit, Inc.* v. *Brady*, 430 U. S. 274, 279 (1977) (state tax will be upheld if it is "fairly related to the services provided by the State").

[7] The court below relied upon *Alaska* v. *Arctic Maid*, 366 U. S. 199 (1961). That case does not control because the statute there merely laid a nondiscriminatory tax on a particular kind of business, operating freezer ships in Alaska. This was deemed a different business from operating a cannery in Alaska, on which a different (in fact, higher) tax was imposed. See *id.*, at 205. There is no dispute that Armco and the exempt West Virginia manufacturers operate in precisely the same business of wholesaling in that State. That an exemption is required to ensure that the gross receipts tax will not apply to the latter makes this clear. The same is true of *Caskey Baking Co.* v. *Virginia*, 313 U. S. 117, 119–120, 121 (1941). The latter case in any event was decided under the now rejected notion that only "direct" burdens on interstate commerce were disapproved, while "indirect" burdens that were the result of taxation of intrastate commerce were constitutional. See *id.*, at 120, and n. 4; *Department of Revenue of Washington* v. *Association of Washington Stevedoring Cos.*, 435 U. S. 734,

Moreover, when the two taxes are considered together, discrimination against interstate commerce persists. If Ohio or any of the other 48 States imposes a like tax on its manufacturers—which they have every right to do—then Armco and others from out of State will pay both a manufacturing tax and a wholesale tax while sellers resident in West Virginia will pay only the manufacturing tax. For example, if Ohio were to adopt the precise scheme here, then an interstate seller would pay the manufacturing tax of 0.88% *and* the gross receipts tax of 0.27%; a purely intrastate seller would pay only the manufacturing tax of 0.88% and would be exempt from the gross receipts tax.

Appellee suggests that we should require Armco to prove actual discriminatory impact on it by pointing to a State that imposes a manufacturing tax that results in a total burden higher than that imposed on Armco's competitors in West Virginia. This is not the test. In *Container Corp. of America* v. *Franchise Tax Board,* 463 U. S. 159, 169 (1983), the Court noted that a tax must have "what might be called internal consistency—that is the [tax] must be such that, if applied by every jurisdiction," there would be no impermissible interference with free trade. In that case, the Court was discussing the requirement that a tax be fairly apportioned to reflect the business conducted in the State. A similar rule applies where the allegation is that a tax on its face discriminates against interstate commerce. A tax that unfairly apportions income from other States is a form of discrimination against interstate commerce. See also *id.,* at 170–171. Any other rule would mean that the constitutionality of West Vir-

---

750 (1978). This distinction also appears to have governed the definition of the business in which the taxpayer was engaged.

We acknowledge our recent dismissal for want of a substantial federal question of a case raising, *inter alia,* a nearly identical challenge to the West Virginia gross receipts tax. *Columbia Gas Transmission Corp.* v. *Rose,* 459 U. S. 807 (1982). We may find it necessary not to follow such a precedent when the issue is given plenary consideration. See, *e. g., Caban* v. *Mohammed,* 441 U. S. 380, 390, n. 9 (1979).

ginia's tax laws would depend on the shifting complexities of the tax codes of 49 other States, and that the validity of the taxes imposed on each taxpayer would depend on the particular other States in which it operated.[8]

It is true, as the State of Washington appearing as *amicus curiae* points out, that Armco would be faced with the same situation that it complains of here if Ohio (or some other State) imposed a tax only upon manufacturing, while West Virginia imposed a tax only upon wholesaling. In that situation, Armco would bear two taxes, while West Virginia sellers would bear only one. But such a result would not arise from impermissible discrimination against interstate commerce but from fair encouragement of in-state business. What we said in *Boston Stock Exchange*, 429 U. S., at 336–337, is relevant here as well:

> "Our decision today does not prevent the States from structuring their tax systems to encourage the growth

---

[8] What was said in a related context is relevant:

"It is suggested, however, that the validity of a gross sales tax should depend on whether another State has also sought to impose its burden on the transactions. If another State has taxed the same interstate transaction, the burdensome consequences to interstate trade are undeniable. But that, for the time being, only one State has taxed is irrelevant to the kind of freedom of trade which the Commerce Clause generated. The immunities implicit in the Commerce Clause and the potential taxing power of a State can hardly be made to depend, in the world of practical affairs, on the shifting incidence of the varying tax laws of the various States at a particular moment. Courts are not possessed of instruments of determination so delicate as to enable them to weigh the various factors in a complicated economic setting which, as to an isolated application of a State tax, might mitigate the obvious burden generally created by a direct tax on commerce." *Freeman* v. *Hewit*, 329 U. S. 249, 256 (1946).

The court in *Columbia Steel Co.* v. *State*, 30 Wash. 2d 658, 662–664, 192 P. 2d 976, 978–979 (1948), found this language dispositive in invalidating a Washington tax scheme identical to that here. See also *Halliburton Oil Well Co.* v. *Reily*, 373 U. S. 64, 72 (1963) (deleterious effects on free commerce of Louisiana's tax would be exacerbated "[i]f similar unequal tax structures were adopted in other States").

and development of intrastate commerce and industry. Nor do we hold that a State may not compete with other States for a share of interstate commerce; such competition lies at the heart of a free trade policy. We hold only that in the process of competition no State may discriminatorily tax the products manufactured or the business operations performed in any other State."

The judgment below is reversed.

*It is so ordered.*

JUSTICE REHNQUIST, dissenting.

The Court today strikes down West Virginia's wholesale gross receipts tax, finding that the wholesale tax unconstitutionally discriminates against interstate commerce, because local manufacturers are granted an exemption from the wholesale tax if they pay a manufacturing tax on their gross manufacturing receipts. Appellant's arguments, however, effectively rest on the hypothetical burden it might face if another State levied a corresponding tax on its manufacturers. Because appellant has not shown that the taxes paid by out-of-state wholesalers on the same goods are higher than the taxes paid by in-state manufacturer-wholesalers, I would affirm the decision below. It is plain that West Virginia's tax would be unconstitutionally discriminatory if it levied no tax on manufacturing or taxed manufacturing at a lower rate than wholesaling, for then the out-of-state wholesaler would be paying a higher tax than the in-state manufacturer-wholesaler. But that is not the case here. Instead, a manufacturer selling his products at wholesale in West Virginia pays a much higher overall tax rate than the out-of-state wholesaler. The Court dismisses that fact, asserting that because in-state manufacturers formally pay no wholesale tax, the taxing scheme is facially discriminatory. The Court also rejects the possibility that West Virginia's manufacturing tax incorporates the tax otherwise levied on wholesale sales.

Neither of these reasons, in my view, supports invalidating the State's wholesale tax scheme. Our prior decisions indi-

cate that when considering whether a tax is discriminatory, "equality for the purposes of competition and the flow of commerce is measured in dollars and cents, not legal abstractions." *Halliburton Oil Well Co.* v. *Reily*, 373 U. S. 64, 70 (1963) (footnote omitted). See also *Maryland* v. *Louisiana*, 451 U. S. 725, 756 (1981) (state tax must be examined for practical effect). Examining the State's tax structure as a whole, see *Washington* v. *United States*, 460 U. S. 536, 545–546 (1983), it is plain that West Virginia has not created a tax granting a direct commercial advantage to local businesses. See *Boston Stock Exchange* v. *State Tax Comm'n*, 429 U. S. 318, 329 (1977) (transfer tax on local stock sales one-half the rate imposed on out-of-state sales). Under West Virginia's taxing scheme, in-state manufacturer-wholesalers pay a tax rate of 0.88% on the value of the manufactured product, while out-of-state wholesalers pay only a 0.27% tax on the wholesale value. Thus, at the wholesale level at which appellant competes with in-state manufactured goods, it is quite likely that appellant pays much less in state taxes than any in-state manufacturer-wholesaler. This fact, in my view, suffices to rebut appellant's argument that the State's wholesale tax discriminates against interstate trade. Cf. *Washington* v. *United States*, *supra*, at 541–542 (Federal Government and federal contractors pay less tax than local contractors); *Alaska* v. *Arctic Maid*, 366 U. S. 199, 204 (1961) (local fish processors paid higher tax).*

The Court also justifies its decision on the ground that if Ohio, or any State where appellant may manufacture products sold in West Virginia, imposed a manufacturing tax,

---

*Admittedly, because the tax paid by manufacturers is imposed on the manufactured value, while wholesalers pay a tax on the wholesale value, it is theoretically possible for appellant to pay a higher amount of tax than an in-state manufacturer. For this to happen, however, the wholesale value would have to be more than three and one-quarter times the manufactured value. In normal practice this price differential would seem unlikely. In any event, appellant has failed to show that it in fact pays a higher tax than an in-state manufacturer. Cf. *General Motors Corp.* v. *Washington*, 377 U. S. 436, 448–449 (1964).

appellant might possibly pay more taxes on its goods sold in West Virginia than a local manufacturer. But appellant has not demonstrated that it in fact has a higher tax burden in West Virginia solely by reason of interstate commerce. The Court sidesteps that fact, however, by borrowing a concept employed in our net income tax cases. Under that line of cases a state tax must have an internal consistency that takes into consideration the impact on interstate commerce if other jurisdictions employed the same tax. See *Container Corp. of America* v. *Franchise Tax Board*, 463 U. S. 159, 169 (1983). It is perfectly proper to examine a State's net income tax system for hypothethical burdens on interstate commerce. Nevertheless, that form of analysis is irrelevant to examining the validity of a gross receipts tax system based on manufacturing or wholesale transactions. Where a State's taxes are linked exactly to the activities taxed, it should be unnecessary to examine a hypothetical taxing scheme to see if interstate commerce would be unduly burdened. See *Standard Pressed Steel Co.* v. *Washington Revenue Dept.*, 419 U. S. 560, 564 (1975); cf. *Commonwealth Edison Co.* v. *Montana*, 453 U. S. 609, 617 (1981).

The Court's analysis also employs a formalism I thought we had generally abandoned in *Complete Auto Transit, Inc.* v. *Brady*, 430 U. S. 274, 288–289, n. 15 (1977), where we rejected the *per se* rule and the administrative convenience that attended our former holding in *Spector Motor Service, Inc.* v. *O'Connor*, 340 U. S. 602 (1951). I would apply a similarly realistic approach to this case and uphold West Virginia's wholesale tax scheme.