Titone, J.
(dissenting). I disagree with the majority that New York’s tax on the intangible assets of the Tamagnis does not substantially affect interstate commerce. The majority argues that New York is not taxing interstate commerce because, in taxing income from intangibles, it is not taxing anything that moves across State lines in trade or commerce. Therefore, in the majority’s view, the tax is “completely indif *546 ferent to the interstate activities” in which the Tamagnis engage. The majority is wrong because the question is not whether interstate commerce is taxed, but whether, as the United States Supreme Court has consistently held, interstate commerce is substantially affected by the tax (Camps Newfound/Owatonna v Town of Harrison, 520 US 564; Fulton Corp. v Faulkner, 516 US 325; Tyler Pipe Indus. v Department of Revenue, 483 US 232; Armco Inc. v Hardesty, 467 US 638).
Purely in-State taxes can still substantially affect interstate commerce, and the case law is replete with examples. The fact that taxes are levied on New York statutory residents does not make this a purely New York affair. In Fulton Corp. v Faulkner, the Court struck down an intangibles tax on North Carolina State residents because the tax had the effect of discriminating against out-of-State corporations by taxing their dividends more if they remained outside of the State (516 US 325, supra). In Camps Newfound/Owatonna v Town of Harrison, the Court struck down a State tax on summer camps (and other charitable organizations) that imposed a lower tax rate on those serving in-State residents, as opposed to those who served out-of-State residents (520 US 564, supra). The fact that the camp was enjoyed in Maine, and that the tax was on a Maine business, did not change the fact that the tax on a Maine summer camp, 95% of whose campers came from out-of-State, was substantially affecting interstate commerce (id.; see, Commonwealth Edison Co. v Montana, 453 US 609 [tax on coal only mined in State still subject to dormant Commerce Clause protections]). Although the town imposing the tax on the Maine summer camp tried to argue that the tax was like a real estate tax, the Court firmly rejected the idea. It held that “[t]o allow a State to avoid the strictures of the dormant Commerce Clause by the simple device of labeling its discriminatory tax a levy on real estate would destroy the barrier against protectionism that the Constitution provides” (520 US 564, 575, supra).
Here, New York, under the majority’s reasoning, is attempting to do the same thing. The majority labels the tax, a tax on intangibles or a tax on New York residents, but these labels are not enough to eliminate the effect that this tax has on interstate commerce. The tax at issue is imposed by New York on those domiciled in other States, who, like the Tamagnis, come to New York and remain for a portion of at least 184 days and who maintain a “permanent place of abode” in New *547 York (Tax Law § 605 [b] [1]; §§ 612, 620 [a]). Although the “permanent place of abode” required under Tax Law § 605 (b) (1) is in New York, this statute, which is aimed at nondomiciliaries, also clearly contemplates that the person maintaining the abode comes from another State. Here, for example, petitioner, though not domiciled in New York, works here, and, as a result, he must travel into New York on a regular basis. He maintains a residence here and bought an apartment here to facilitate his ability to engage in his interstate economic and commercial activity.
The movement of people across State borders for economic purposes has previously been held to implicate interstate commerce (see, Camps Newfound / Owatonna v Town of Harrison, 520 US 564, supra; Edwards v California, 314 US 160, 172; see also, W.C.M. Window Co. v Bernardi, 730 F2d 486, 494 [7th Cir] [restriction of “flow into Illinois of labor services” is similar under a Commerce Clause analysis to the “flow of coal”]; Chamber of Commerce v State, 89 NJ 131, 160, 445 A2d 353, 368 [entry into State of those who would seek to break a labor strike constituted commerce]). As to the purchase of property, the Supreme Court in Camps Newfound/Owatonna, assumed, without deciding, that the Congress could impose a national real estate tax, and, as a result, even the purchase of property can exhibit substantial effects on interstate commerce (Camps Newfound/Owatonna v Town of Harrison, 520 US 564, supra [activities that trigger protections of dormant Commerce Clause are those which can be reached by Congressional regulation under commerce power]).
The fact that Congress has recently enacted a law regarding limitations on a State’s ability to tax nonresidents does not support the majority’s argument (see, 4 USC § 114 [a], added by Pub L 104-95). It undercuts it. If Congress’s commerce power can reach a State’s right to tax its residents, it naturally follows that taxation of residents is an activity that substantially affects interstate commerce.
Once a State tax is determined to substantially affect interstate commerce, the question then becomes whether the tax unduly burdens interstate commerce. A State tax will do so, among other things, if it imposes a risk of multiple taxation. That risk is clearly prohibited by Complete Auto Tr. v Brady (430 US 274) and its progeny. Under Complete Auto Tr. v Brady, the State tax will pass muster under the dormant Commerce Clause only if it satisfies a four-fold inquiry. New York’s tax (1) must apply to an activity with a substantial nexus with *548 the taxing State, (2) must be fairly apportioned, (3) cannot discriminate against interstate commerce, and (4) must fairly relate to the services provided by the State (Complete Auto Tr. v Brady, supra, 430 US, at 279).
The Complete Auto test should be applied in this case. It ensures that State taxes do not disrupt the national economy by burdening or discriminating against interstate commerce,[1] while at the same time allowing for State taxation of those activities that are properly attributable to a State (Quill Corp. v North Dakota, 504 US 298, 312). Specifically, here, the Complete Auto test applies because New York is taxing out-of-State domiciliaries who travel across State lines for economic or commercial purposes. Such a situation requires an analysis as to whether the State tax violates the dormant Commerce Clause and does not infringe upon its protection of the free flow of trade and economic activity across State borders. The United States Supreme Court has consistently applied this test to determine whether a State tax that substantially affects interstate commerce is constitutional under the dormant Commerce Clause (Goldberg v Sweet, 488 US 252, 260-261; Tyler Pipe Indus. v Department of Revenue, 483 US 232, 247, supra; Armco Inc. v Hardesty, 467 US 638, 644-645).
The pertinent part of the Complete Auto test in this case, as petitioners argue, is whether the tax is fairly apportioned. Fair apportionment, in the verbiage of taxation, means that the State tax is “internally consistent” (see, Container Corp. v Franchise Tax Bd., 463 US 159, 169; Goldberg v Sweet, supra, 488 US, at 261). As the United States Supreme Court has *549 repeatedly held, a reviewing court determines “internal consistency” by supposing that all the States have adopted the State taxing scheme at issue and then determines whether there is the risk of multiple taxation (Oklahoma Tax Commn. v Jefferson Lines, 514 US 175, 179, supra; Tyler Pipe Indus. v Department of Revenue, 483 US 232, 235-236, supra; Armco Inc. v Hardesty, supra, 467 US, at 644-645; Container Corp. v Franchise Tax Bd., supra, 463 US, at 169).
The New York tax scheme fails that test. Assuming that all other States adopted New York’s tax law, there would be the risk of multiple taxation of a taxpayer’s income from intangible assets. If New York’s tax law applied in all States, an individual who spent a portion of over 183 days in three States and maintained a residence in each of these three States would have to pay tax on their income from intangible assets in all three. Multiple taxation is the event to be avoided, but New York has not avoided that risk in its tax law. The fact that in this case New Jersey granted the petitioners a tax credit for the taxes paid on income from intangibles does not change the analysis (see, NJ Stat Annot § 54A:4-1). The United States Supreme Court has been clear that only the risk of multiple taxation is required (see, Goldberg v Sweet, supra, 488 US, at 261; Armco Inc. v Hardesty, supra, 467 US, at 645). “Any other rule would mean that the constitutionality of [a State’s] tax laws would depend on the shifting complexities of the tax codes of 49 other States, and that the validity of the taxes imposed on each taxpayer would depend on the particular other States in which it operated” (Armco Inc. v Hardesty, 467 US, at 644-645). In other words, all that is required under the internal consistency test is the risk of multiple taxation, and here, there is a clear risk of a multiple taxation burden.
New York could have avoided this burden by recognizing a credit for taxes paid to other States on income from intangible assets (cf., Goldberg v Sweet, supra, 488 US, at 263-264 [Illinois’s credit for taxes paid to other States cured multiple taxation problem]). New York, however, has not removed the risk of multiple taxation through a tax credit. As a result, the statute that triggers this risk, Tax Law § 605 (b) (1), is unconstitutional under the dormant Commerce Clause.
The majority argues that the Complete Auto test should not apply. It, in essence, states that the test should not be used because it would be impossible to find discrimination against interstate commerce in this case. Relying on General Motors Corp. v Tracy (519 US 278), the majority asserts that before *550 there can be a finding of discrimination there must be “similarly situated” in-State and out-of-State participants in an “identifiable interstate market.” It asserts that the Tamagnis’ situation here does not fit within this framework. As the Supreme Court has noted, “The fact that [a State tax] ‘has the advantage of appearing nondiscriminatory’ * * * does not save it from invalidation”[2] (Tyler Pipe Indus. v Department of Revenue, supra, 483 US, at 248).
The majority analysis is inapposite. The dormant Commerce Clause protects against two impediments to interstate commerce. One is discrimination and the other is undue burden (see, Quill Corp. v North Dakota, supra, 504 US, at 312 [noting these two protections under the dormant Commerce Clause]). A State may not discriminate against out-of-State participants in interstate commerce in favor of in-State interests, but a *551 State also may not impose cumulative burdens on interstate commerce (id.). This case is an undue burden case (see, e.g., Kassel v Consolidated Freightways Corp., 450 US 662). The Tamagnis come to New York to work and have bought property in the State, but they are discouraged from doing so by the burden that the New York tax law creates. The dormant Commerce Clause prohibits such tax burdens unless they comply with Complete Auto. It does not logically follow from the fact that there may or may not be discrimination against interstate commerce in this case that there is no undue burden on interstate commerce (see, Quill Corp. v North Dakota, supra, 504 US, at 312). Discrimination against interstate commerce is only one prong of the Complete Auto test and is only one of the problems to be avoided.
The majority relies on Oklahoma Tax Commn. v Jefferson Lines (514 US 175, supra) to conclude that if the Complete Auto test applies in this case there is no need for fair apportionment because New York is taxing a resident, which is a “separable local occurence” in New York. Residency under New York’s definition, according to the majority, is incapable of repetition elsewhere. As the internal consistency test shows, the interstate activities on which the tax is based are capable of repetition in another State (see, Goldberg v Sweet, supra, 488 US, at 262-264 [other States could tax interstate phone calls which Illinois taxed]).
The activities here are not purely local. New York’s tax on residents cannot be likened to a sales tax on a bus ticket as was upheld in Oklahoma Tax Commn. v Jefferson Lines (supra). The sale of a bus ticket is a “separable local” event. The bus ticket would only be sold once, and thus the State in which this one event occurred could tax it. Similarly, in Western Live Stock v Bureau of Revenue: “All the events upon which the tax is conditioned — the preparation, printing and publication of the advertising matter, and the receipt of the sums paid for it — occur in [just one State] and not elsewhere” (303 US 250, 260). The subject of a tax is not a local event whiere, as here, it is conditioned on a domiciliary of another State coming to New York 184 times a year who engages in commercial activity. New York’s tax does not fall on a local event. It is triggered by interstate commercial activity, and falls not on a local event, but on the income from intangible assets which are capable of being taxed elsewhere. The failure to fairly apportion the tax in such an instance, as New York has failed to do here, is fatal.
Even assuming the tax burdens interstate commerce, the majority then goes on to hold that the tax New York imposes is *552 constitutionally sufficient on State sovereignty grounds. The dormant Commerce Clause, it says, is inapplicable to State resident income taxation, which is a State’s traditional prerogative. A State, of course, is not prohibited from taxing its residents and, moreover, a State may define its residents in any way that comports with due process (see, Shaffer v Carter, 252 US 37).
What a State may not do, however, is impose cumulative burdens on interstate commerce, or, in other words, a State may not impose the risk of multiple taxation on those engaging in interstate commerce. Although the majority cites many due process cases for the proposition that multiple taxes on the same income of a resident is constitutional, it will not find, and cannot cite one dormant Commerce Clause case that so holds. The Due Process Clause, on which the majority relies, and the dormant Commerce Clause, “are animated by different constitutional concerns and policies” (Quill Corp. v North Dakota, 504 US 298, 312, supra). Due process concerns “the fundamental fairness of governmental activity” (id., at 312). The dormant Commerce Clause involves “structural concerns about the effects of state regulation on the national economy” including “state taxes and duties [that have] hindered and suppressed interstate commerce” (id., at 312). While imposing a tax may be “fundamentally fair,” the State tax may nonetheless be constitutionally infirm because it “hinder[s] and suppressed] interstate commerce” (cf., id., at 312-313). Jurisdiction to tax and burdening interstate commerce involve different constitutional concerns.[3]
Although it is a State’s traditional prerogative to tax its residents, it is not a State’s prerogative to unduly burden interstate commerce. The main case that the majority relies on, National League of Cities v Usery (426 US 833), was concededly overruled nine years later by Garcia v San Antonio Metro. Tr. Auth. (469 US 528). There is simply no State sovereignty exception to the dormant Commerce Clause.
Here, by failing to grant a tax credit for taxes paid to other States on income from intangible assets, New York has created the risk of multiple taxation. That violates the dormant Commerce Clause, and I dissent.
*553 Chief Judge Kaye and Judges Bellacosa, Smith, Levine and Ciparick concur with Judge Wesley; Judge Titone dissents and votes to reverse in a separate opinion.
Judgment affirmed, with costs.

. The United States Supreme Court has long recognized that a lack of economic union among the States will be at the expense of political union (see, Oklahoma Tax Commn. v Jefferson Lines, 514 US 175, 179-183; Complete Auto Tr. v Brady, 430 US 274, 280-284, supra [both compiling cases and recounting history]; Gibbons v Ogden, 9 Wheat [22 US] 1 [1824] [Marshall, Ch. J., in dictum]). As a result, the Commerce Clause had to have a dormant or negative aspect that prohibited the States from erecting barriers to the free flow of trade and commerce across State lines (see, Camps Newfound/Owatonna v Town of Harrison, 520 US 564, 571-572, supra). This dormant aspect may be as, if not more, important than Congress’s power to regulate under the Commerce Clause in order to ensure the “united” in United States (see, The Federalist Nos. 42 [Madison], 7 and 11 [Hamilton]). The dormant Commerce Clause also works to prevent the problem of taxation without representation. A tax on a nondomiciliary, which means he or she does not vote in the taxing State, is “not likely to be alleviated by those political restraints which are normally exerted on legislation where it affects adversely interests within the state” (McGoldrick v Berwind-White Co., 309 US 33, 45-46, n 2).

. As the Court in General Motors Corp. v Tracy noted, many dormant Commerce Clause cases exhibit both an “undue burden on” and “discrimination against” interstate commerce (519 US 278, 298-299, n 12, supra). This “discrimination framework” is present here, and also demonstrates that New York’s tax may fail. Out-of-State domiciliaries are similarly situated to New York domiciliaries. Each has the same relationship to his or her State of domicile and is subject to tax there. But under New York’s tax law, those out-of-State domiciliaries that cross into New York to work, and thus participate in the labor market, and who also maintain a place to live in New York, and thus participate in the property market, are subject to the risk of multiple taxation. Those persons domiciled in New York and who also work and buy or rent property in New York are not subject to this risk. As a result, New York’s tax law discriminates against out-of-State participants in its labor and property markets because the risk attendant on that participation are not borne by both New York and out-of-State domiciliaries. New York domiciliaries have an advantage in that their working and having a place to live in New York would not risk multiple taxation.
Furthermore, the majority’s analysis is flawed in one other simple respect. To require an “identifiable interstate market” would mean that a market which is protected by State regulation to the exclusion of interstate competition could never present a dormant Commerce Clause problem because that market could never meet the threshold showing that it was an interstate market. To the contrary, “ ‘[o]ur system, fostered by the Commerce Clause, is that every farmer and every craftsman shall be encouraged to produce by the certainty that he [or she] will have free access to every market in the Nation’ ” (General Motors Corp. v Tracy, 519 US 278, 299, supra, quoting Hood & Sons v Du Mond, 336 US 525, 539).
The majority takes the narrow exception of General Motors Corp. v Tracy as the rule. In that case, the Court recognized that the captive, noncompetitive, residential natural gas market was so local and the product it distributed so essential to health and safety that the State could subject local distribution companies which served that market to different tax treatment (519 US 278, supra). Here, there is no intimation that such an exceptional circumstance exists in the New York property or labor markets.

. The “Complete Auto test, while responsive to Commerce Clause dictates, encompasses as well * * * due process requirement [s]” (Trinova Corp. v Michigan Dept. of Treasury, 498 US 358, 373).