IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Diane Zilka, | : | |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 1063 C.D. 2019 |
| | : | No. 1064 C.D. 2019 |
| Tax Review Board City of | : | Argued: February 10, 2021 |
| Philadelphia | : | |

BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge[1]
            HONORABLE MARY HANNAH LEAVITT, Judge[2]
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                          FILED:  January 7, 2022


         In these consolidated cases, Diane Zilka (Taxpayer) appeals the orders of the Philadelphia County Court of Common Pleas (trial court) affirming the decisions of the City of Philadelphia's (Philadelphia) Tax Review Board (Board) that denied her petitions seeking a refund of the Philadelphia Wage Tax paid on her

---

[1] The Court reached the decision in this case prior to the conclusion of President Judge Emeritus Brobson's service on the Commonwealth Court.

[2] This matter was assigned to the panel before January 3, 2022, when President Judge Emerita Leavitt became a senior judge on the Court.

income for the taxable periods of January 1, 2013, to December 31, 2015, and January 1, 2016, to December 31, 2016.  Taxpayer argues that she is entitled to a refund to avoid unconstitutional double taxation on the same income caused by the Philadelphia Wage Tax.  Discerning no error, we affirm.

## I. Background

Taxpayer is a resident of Philadelphia, Pennsylvania, but during the tax years at issue, she worked full time in Wilmington, Delaware.  In April 2017 and June 2017, Taxpayer filed petitions with the Philadelphia Department of Revenue (Department) seeking refunds for Philadelphia Wage Taxes paid from 2013 through 2015 and 2016, respectively.  During those tax periods, Taxpayer's Delaware employer withheld the following taxes:  Philadelphia Wage Tax, Wilmington Earned Income Tax (Wilmington Tax), Pennsylvania Income Tax (Pennsylvania Tax), and Delaware Income Tax (Delaware Tax).  Taxpayer claimed a credit for the Delaware Tax (5%) to offset the Pennsylvania Tax (3.07%) on her Pennsylvania Personal Income Tax (PIT) return; Pennsylvania allowed a full credit.  Taxpayer also claimed a credit for the Wilmington Tax (1.25%) and the balance of the Delaware Tax (5% - 3.07% = 1.93%) to offset the Philadelphia Wage Tax (3.92%).[3]  The Department allowed a credit for the Wilmington Tax against the Philadelphia Wage Tax but not for the remainder of the Delaware Tax.

Taxpayer appealed to the Board challenging the Department's denials as to both tax periods on the basis that she was entitled to a refund for a portion of the unused Delaware Tax credits.  Taxpayer argued that she was taxed, on average,

---

[3] Taxpayer and Philadelphia both utilized percentages and calculations from the 2014 tax year as the primary example in their briefs.  For sake of simplicity, this Court has done the same. The 2014 tax year is representative of the other years, albeit slight variations exist.

1.93% higher than her intrastate counterparts. Taxpayer claimed that the Department's refusal to apply the remainder of the Delaware Tax as credit against the Philadelphia Wage Tax amounted to an unconstitutional burden on interstate commerce. The Board denied her appeals, and the trial court affirmed without taking additional evidence. Taxpayer appealed both decisions to this Court, which we have consolidated for review.[4]

## II. Issues

Before this Court, Taxpayer argues that the trial court erred by denying her a credit against her Philadelphia Wage Taxes for the portion of income taxes that she paid to Delaware, which was not credited against her income taxes paid to Pennsylvania. Taxpayer contends that the failure to award a credit amounts to double taxation in violation of the Commerce Clause, U.S. Const. art. 1, §8, cl. 3.

According to Taxpayer, she was taxed four times on the same income by Pennsylvania, Philadelphia, Delaware and Wilmington. The Department's "policy"[5] is to refund similar taxes withheld by other *local* jurisdictions, but not by other *states*. By failing to apply the remainder of the taxes withheld by Delaware (after the offset applied by Pennsylvania) to offset her Philadelphia Wage Tax, she

---

[4] Where, as here, the trial court took no additional evidence, our review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the Board's findings of fact are supported by substantial evidence. Section 754(b) of the Administrative Agency Law, 2 Pa. C.S. §754(b); *Philadelphia Eagles Football Club, Inc. v. City of Philadelphia*, 823 A.2d 108, 118 (Pa. 2003). Because the issue in this case is a question of law, our scope of review is plenary. *Philadelphia Eagles*, 823 A.2d at 118.

[5] Taxpayer takes issue with the fact that the Department's policy is not a formal written policy, but a practice. Appellant's Brief at 8-9, 9 n.6. However, the manner in which the Department applied the tax credits, whether pursuant to a formal written "policy" or an informal "practice," is irrelevant for a Commerce Clause analysis.

maintains that the Philadelphia Wage Tax and the tax scheme fail the test set forth in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274 (1977), in two ways. First, the tax is not fairly apportioned because it fails to provide a mechanism to mitigate the risk of duplicative taxation for income earned from interstate commerce and fails to meet the internal and external consistency tests. The Philadelphia Wage Tax does not meet the internal consistency test because it taxes interstate wages at a higher rate than intrastate wages. It does not meet the external consistency test because the tax "reaches beyond" that portion of the value fairly attributable to economic activity in the taxing state. Taxpayer conducted no business in Philadelphia; she simply resided there during the tax years at issue. There is no connection between Philadelphia and the activity being taxed. Second, Philadelphia's partial credit practice discriminates against her because she pays more in tax than her intrastate counterparts. In support of her position, Taxpayer relies heavily on *Comptroller of Treasury of Maryland v. Wynne*, 575 U.S. 542 (2015), in which the United States Supreme Court applied the *Complete Auto* test and invalidated a similar tax scheme under the Commerce Clause.

### III. Discussion
### A. Commerce Clause - Double Taxation

The Commerce Clause grants Congress the power to "regulate Commerce . . . among the several States." U.S. Const. art. 1, §8, cl. 3. "Although the Clause is framed as a positive grant of power to Congress," the United States Supreme Court has "'consistently held this language to contain a further, negative command, known as the dormant Commerce Clause, prohibiting certain state taxation even when Congress has failed to legislate on the subject.'" *Wynne*, 575 U.S. at 549 (quoting *Oklahoma Tax Commission v. Jefferson Lines, Inc.*, 514 U.S.

4

175, 179 (1995)). Under the dormant Commerce Clause, States "'may not tax a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State.'" *Id.* (quoting *Armco Inc. v. Hardesty*, 467 U.S. 638, 642 (1984)). "'Nor may a State impose a tax which discriminates against interstate commerce either by providing a direct commercial advantage to local business, or by subjecting interstate commerce to the burden of 'multiple taxation.'" *Id.* at 549-50 (quoting *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 458 (1959)). In short, the Commerce Clause forbids double taxation. *Id.* at 550-51; *see, e.g.*, *Central Greyhound Lines, Inc. v. Mealey*, 334 U.S. 653, 660 (1948) (New York tax scheme that sought to tax a portion of a domiciliary bus company's gross receipts that were derived from services provided in neighboring States violated dormant Commerce Clause because it imposed an "unfair burden" on interstate commerce); *Gwin, White & Prince, Inc. v. Henneford*, 305 U.S. 434 (1939) (Washington state's tax on income that a corporation earned in shipping fruit from Washington to other States and foreign countries discriminated against interstate commerce because the scheme did not similarly expose local commerce to the tax burden); *J.D. Adams Manufacturing Co. v. Storen*, 304 U.S. 307 (1938) (State income tax on a corporation's out-of-state sales violated the dormant Commerce Clause by subjecting interstate commerce to double taxation but not intrastate commerce).

Upon review, Taxpayer's income is not being doubly taxed. Taxpayer never pays more than one local tax or more than one state tax. In other words, Philadelphia is not taxing Taxpayer's income "more heavily when it crosses state lines than when it occurs entirely within the State." *Wynne*, 575 U.S. at 549. Rather, Philadelphia is taxing Taxpayer the same as other residents who worked intrastate –

5

3.92%. Although we recognize that Taxpayer pays 1.93% more than her intrastate counterparts, that is because Taxpayer chose to work in Delaware, *which charges a higher income tax than Pennsylvania*. As the trial court recognized, Delaware's higher income tax "is neither unconstitutional, nor attributable to any unconstitutional action taken by . . . Philadelphia." Trial Court Op., 8/28/2019, at 5. While Wilmington charges less than Philadelphia, Philadelphia credited 100% of the Wilmington Tax to offset the Philadelphia Wage Tax. The fact that Philadelphia chose not to additionally apply credit for the "unused" balance of the Delaware Tax towards its Wage Tax does not amount to double taxation. *See Wynne*. Assuming the risk that a double tax burden may exist, we examine whether the Philadelphia Wage Tax withstands the constitutional test set forth in *Complete Auto*.

## B. *Complete Auto*

*Complete Auto* is the seminal United States Supreme Court case addressing the applicability of the Commerce Clause to state and local taxation. In *Complete Auto*, the Court fashioned a four-prong test to determine whether a state or local tax unconstitutionally burdens interstate commerce. 430 U.S. at 279. The test requires: (1) the activity must have a substantial nexus with the taxing district; (2) the tax must be fairly apportioned; (3) the tax does not discriminate against interstate commerce; and (4) there must be a reasonable relationship between the tax imposed upon the taxpayer and the services provided by the taxing district. *Id.* Failure to meet any one prong renders the tax unconstitutional. *Id.* Our focus here is on the second and third prongs.

### 1. Second Prong - Fair Apportionment

6

The second prong of the *Complete Auto* test "'ensures that each State taxes only its fair share of an interstate transaction.'" *Jefferson Lines, Inc.*, 514 U.S. at 184 (quoting *Goldberg v. Sweet*, 488 U.S. 252, 260-61 (1989)).  The purpose is to eliminate the "danger of interstate commerce being smothered by cumulative taxes of several states."  *Complete Auto*, 430 U.S. 277 (citation omitted).  We determine whether a tax on interstate commerce is fairly apportioned by examining whether it is internally and externally consistent.  *Jefferson Lines*, 514 U.S. at 185 (quoting *Goldberg*, 488 U.S. at 261).

**a. Internal Consistency**

The internal consistency test "'looks to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate.'" *Wynne*, 575 U.S. at 562 (quoting *Jefferson Lines*, 514 U.S. at 185).  The test helps courts identify tax schemes that discriminate against interstate commerce.  *Id.* Assuming that every State has the same uniform tax scheme, all states would grant a credit that precisely reduces the taxpayers' in-state tax to the same amount they would pay if they earned all that income in-state. *See id.*  Such a scheme would add no burden to interstate commerce that intrastate commerce would not also bear.  *See id.*

"Although the adoption of a uniform code would undeniably advance the policies that underlie the Commerce Clause," it is not required.  *Moorman Manufacturing Co. v. Bair*, 437 U.S. 267, 279 (1978).  The dormant Commerce Clause does not prohibit jurisdictions from using different tax formulas; rather, it prohibits discrimination that "inhere[s] in either State's formula."  *Id.* at 277 n.12.

7

In other words, there is no "discriminat[ion] against interstate commerce" where the alleged taxation disparities are "the consequence of the combined effect" of two otherwise lawful income tax schemes. *Id.*

The United States Supreme Court has repeatedly held that the internal consistency test is met by a system of credits, which exempts the taxpayer to the extent that he or she has already paid the same tax in another state. *See Jefferson Lines*, 514 U.S. at 185; *Goldberg*, 488 U.S. at 262; *see also Tyler Pipe Industries, Inc. v. Washington State Department of Revenue*, 483 U.S. 232, 245 n.13 (1987) (noting that "[m]any States provide tax credits that alleviate or eliminate the potential multiple taxation that results when two or more sovereigns have jurisdiction to tax parts of the same chain of commercial events").

Applied here, the Philadelphia Wage Tax meets the internal consistency test. If every jurisdiction imposed a tax scheme identical to Philadelphia's, all individuals earning income outside of their home locality would receive a credit for income taxes paid to the foreign locality and would pay no more than their intrastate counterpart. Any additional tax owed by the interstate taxpayer simply results from the higher tax rate charged on the income by the foreign state. Such consequence does not render Philadelphia's tax formula discriminatory under the internal consistency test. *See Moorman.*

**b. External Consistency**

Next, even if a tax is internally consistent, it must also meet the second component of fair apportionment, *i.e.*, external consistency. *Jefferson Lines*, 514 U.S. at 184. External consistency examines "the economic justification for the State's claim upon the value taxed, to discover whether a State's tax reaches beyond

that portion of value that is fairly attributable to economic activity within the taxing State." *Id.* at 185 (citing *Goldberg*, 488 U.S. at 262). "[T]he threat of real multiple taxation (though not by literally identical statutes) may indicate a State's impermissible overreaching." *Id.*

The Philadelphia Wage Tax meets the external consistency test. The Philadelphia Wage Tax reasonably reflects how and where Taxpayer's income is generated – in Wilmington, Delaware. The Philadelphia Wage Tax is not taxing all of Taxpayer's income regardless of source. Rather, Philadelphia fairly apportions the tax according to its relation to the income by providing a credit for the tax owed to Wilmington. Philadelphia avoided taxing more than its fair share of Taxpayer's wages by providing a tax credit for 100% of the Wilmington Tax. As for Taxpayer's challenge that Philadelphia has no right to tax her out-of-state income, Philadelphia's provision of municipal benefits and services to its residents provides sufficient economic justification for the imposition of its Wage Tax. *Lawrence v. State Tax Commission of Mississippi*, 286 U.S. 276, 279 (1932) (recognizing that "domicile in itself establishes a basis for taxation. Enjoyment of the privileges of residence within the state, and the attendant right to invoke the protection of its laws, are inseparable from the responsibility for sharing the costs of government.").

## 2. Third Prong – Discrimination

A State may not "impose a tax [that] discriminates against interstate commerce either by providing a direct commercial advantage to local business . . . or by subjecting interstate commerce to the burden of 'multiple taxation.'" *Wynne*, 575 U.S. at 549-50 (quoting *Northwestern States*, 358 U.S. at 458) (citations omitted); *accord Jefferson Lines*, 514 U.S. at 197. "Thus, States are barred from

9

discriminating against foreign enterprises competing with local business . . . and from discriminating against commercial activity occurring outside the taxing State[.]" *Jefferson Lines*, 514 U.S. at 197 (citations omitted).

Here, Philadelphia taxes all of its residents' income at the rate of 3.92%. It also permits a full credit for any similar taxes paid to other jurisdictions. Because Taxpayer's income was subject to the 1.25% Wilmington Tax, Philadelphia applied 1.25% credit toward her Philadelphia Wage Tax. Consequently, Taxpayer is not paying income tax twice on her interstate income. Rather, Taxpayer is paying the same 3.92% rate as her Philadelphia counterparts. The difference is that Philadelphia is receiving only 2.67%, while Wilmington is receiving 1.25%. By extending a full credit for taxes paid to Wilmington, Taxpayer's income is not subject to double taxation. There is no disparate treatment or discrimination between Taxpayer and other resident taxpayers of Philadelphia. Thus, the Philadelphia Wage Tax does not discriminate against Taxpayer.

## C. *Wynne*

*Wynne* illustrates the application of the *Complete Auto* test. In *Wynne*, the United States Supreme Court analyzed the constitutionality of Maryland's personal income tax scheme to determine whether it discriminated in favor of intrastate over interstate economic activity. *Wynne*, 575 U.S. at 545. Maryland residents were subject to a two-part income tax: (1) a "state" income tax; and (2) a "county" income tax. *Id.* Residents who paid income tax to another jurisdiction for income earned in that jurisdiction were allowed a credit against the "state" tax, but not the "county" tax. *Id.* at 545-46. Despite the assigned name, the "county" tax was a state tax because it was collected by the Maryland State Comptroller of the

10

Treasury.  *Id.* at 546.  Consequently, part of the income that a Maryland resident earned outside of the State could be taxed twice.  *Id.*

The Wynnes were Maryland residents who earned pass-through income from a Subchapter S corporation that earned income in 39 States.  *Wynne*, 575 U.S. at 546-47.  When filing their Maryland income taxes, the Wynnes claimed an income tax credit for the taxes paid to the other 39 States.  *Id.* at 547.  The Maryland State Comptroller of the Treasury allowed the Wynnes a credit against their "state" income tax, but not against their "county" income tax.  *Id.*  The Wynnes challenged the tax scheme as double taxation.  The United States Supreme Court agreed.  *Id.*

The *Wynne* Court opined that, pursuant to the Commerce Clause of the United States Constitution, a State may not impose a tax that discriminates against interstate commerce either by providing a direct commercial advantage to local business or by subjecting interstate commerce to the burden of multiple taxation. *Wynne*, 575 U.S. at 549-50.  The *Wynne* Court examined tax schemes that it had previously found to be unconstitutional because they "had the potential to result in the discriminatory double taxation of income earned out of state and created a powerful incentive to engage in intrastate rather than interstate economic activity." *Id.* at 561; *see, e.g.*, *Central Greyhound Lines*; *Gwin, White & Prince*; *J.D. Adams*. The *Wynne* Court noted that the tax schemes in the aforementioned three cases "could be cured by taxes that satisfy . . . the 'internal consistency' test."  *Id.* at 561-62 (quoting *Jefferson Lines*, 514 U.S. at 18).

The *Wynne* Court opined that for a tax to satisfy the internal consistency test, there must be a credit for similar taxes paid by a resident taxpayer to other jurisdictions based on income earned there.  *Wynne*, 575 U.S. at 561-62.  Otherwise, the tax amounts to a tariff, "which is fatal because tariffs are '[t]he paradigmatic

11

example of a law discriminating against interstate commerce.'" *Id.* at 565 (quoting *West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 193 (1994)). The Court illustrated:

> Assume that every State imposed the following taxes, which are similar to Maryland's "county" and "special nonresident" taxes: (1) a 1.25% tax on income that residents earn in State, (2) a 1.25% tax on income that residents earn in other jurisdictions, and (3) a 1.25% tax on income that nonresidents earn in State. Assume further that two taxpayers, April and Bob, both live in State A, but that April earns her income in State A whereas Bob earns his income in State B. In this circumstance, Bob will pay more income tax than April solely because he earns income interstate. Specifically, April will have to pay a 1.25% tax only once, to State A. But Bob will have to pay a 1.25% tax twice: once to State A, where he resides, and once to State B, where he earns the income.

*Id.* at 567-68.

The flaw in Maryland's personal income tax scheme was that it imposed a "county" income tax without any credit for similar income taxes paid by resident taxpayers to other states based on income earned in those states. *Wynne*, 575 U.S. at 564-65. The scheme resulted in double taxation of some income earned by Maryland residents outside the state. *Id.* at 565. The *Wynne* Court emphasized that the "Maryland scheme's discriminatory treatment of interstate commerce is not *simply the result of its interaction with the taxing schemes of other States*." *Id.* (emphasis added). Instead, the Court ruled that Maryland's tax scheme was inherently discriminatory and operated as a tariff in violation of the Commerce Clause. *Id.*

Notably, the *Wynne* Court explained that "Maryland could remedy the infirmity in its tax scheme by offering, as most States do, a credit against income

12

taxes paid to other States . . . .  If it did, Maryland's tax scheme would survive the internal consistency test and would not be inherently discriminatory." *Wynne*, 575 U.S. at 568.  The Court then tweaked its hypothetical:

> [A]ssume that all States impose a 1.25% tax on all three categories of income but also allow a credit against income taxes that residents pay to other jurisdictions.  In that circumstance, April (who lives and works in State A) and Bob (who lives in State A but works in State B) would pay the same tax.  Specifically, April would pay a 1.25% tax only once (to State A), and Bob would pay a 1.25% tax only once (to State B, because State A would give him a credit against the tax he paid to State B).

*Id.* at 568.

Although factually distinguishable, *Wynne* is instructive here.  *Wynne* specifically recognized that a constitutional infirmity of double taxation can be avoided by offering a credit against similar income taxes paid out of state. Philadelphia did just that by providing a full credit for the Wilmington Tax, which is similar to the Philadelphia Wage Tax, just as Pennsylvania provided a credit for the Delaware Tax.

Contrary to Taxpayer's assertions, *Wynne* does not compel Philadelphia to apply an additional credit for any dissimilar taxes, such as the Delaware Tax or otherwise aggregate of tax credits.  Although the *Wynne* Court held that Maryland was required to offset its so-called "county" tax against other "state" taxes, the "county" tax was actually a state tax because it was administered, adopted, mandated, and collected by the state.  Here, both the Philadelphia Wage Tax and Wilmington Tax are municipal taxes.  As the trial court aptly observed, it is a "simple 'apples to apples' approach – state taxes to state taxes and local taxes to local taxes."

13

Reproduced Record at 89a. Based upon our reading of *Wynne*, such an approach is reasonable and passes constitutional muster.

Although we understand that Taxpayer pays more than her intrastate counterparts, such is not the result of an unconstitutional tax scheme. Rather, it is simply the "result of the interaction of two different but nondiscriminatory and internally consistent schemes." *Wynne*, 575 U.S. at 562. Taxpayer chose to work in a jurisdiction with a higher tax rate. Philadelphia is not responsible for the fact that Delaware charges 1.93% more than Pennsylvania. Consequently, even after Philadelphia and Pennsylvania applied credits to corresponding income taxes paid to Wilmington and Delaware, respectively, Taxpayer's income was subject to a higher tax rate because of tax disparities that exist between the taxing districts, not because of a discriminatory policy or practice. In short, Taxpayer is not paying income tax twice on her interstate income. There is no support for Taxpayer's position that local and state taxes must be aggregated for Commerce Clause purposes. Philadelphia and Pennsylvania are two distinct taxing jurisdictions administering two distinct taxes to two different sets of citizenry.

## IV. Conclusion

Upon review, because Philadelphia fully credited income tax withheld for the Wilmington Tax, Philadelphia's refusal to additionally credit the remaining income tax withheld for the Delaware Tax does not amount to double taxation. Accordingly, we affirm the orders of the trial court.

MICHAEL H. WOJCIK, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Diane Zilka,                              :
                                          :
                    Appellant             :
                                          :
          v.                              : No. 1063 C.D. 2019
                                          : No. 1064 C.D. 2019
Tax Review Board City of                  :
Philadelphia                              :

# **O R D E R**

AND NOW, this 7th day of January, 2022, the orders of the Court of Common Pleas of Philadelphia County, dated June 26, 2019, are AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge