Argued and submitted September 9, 2014, vacated and remanded for
reconsideration of late petition for reassessment April 29, 2015

HENDRICKSON TRUCKING, INC.,
*Petitioner,*

*v.*

OREGON DEPARTMENT OF TRANSPORTATION,
Motor Carrier Transportation Division,
*Respondent.*

Department of Transportation
MCA0391; A152415

349 P3d 585

Montgomery W. Cobb filed the briefs for petitioner.

Denise Fjordbeck, Attorney in Charge, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Judy C. Lucas, Senior Assistant Attorney General.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

HADLOCK, J.

**HADLOCK, J.**

Petitioner Hendrickson Trucking, Inc., challenges a final order of the Oregon Department of Transportation (ODOT), which denied petitioner's request for reassessment of certain highway use taxes that ODOT had assessed against it. In that order, ODOT determined that petitioner had not timely requested reassessment and, further, that petitioner had "not made a showing of good cause for the failure to file the request in a timely fashion." On review, petitioner asserts that ODOT was required to hold a hearing on the issue of whether petitioner had good cause for the delay in requesting reassessment because a factual dispute existed on that point. Petitioner also argues that ODOT's order is not supported by substantial reason, in that the order does not "explain which of the criteria for good cause it applied or how it reasoned from its factual contentions to the conclusion that those criteria were not met." Given those arguments, we review the order for legal error and for substantial reason, that is, to "determine whether [ODOT] provided a rational explanation of how its factual findings lead to the legal conclusions on which the order is based." *Arms v. SAIF*, 268 Or App 761, 767, 343 P3d 659 (2015). For the reasons that follow, we vacate the order and remand for reconsideration.

## I. BACKGROUND

This case involves Oregon's "weight-mile" or "highway use" tax, which is collected from motor carriers "for the maintenance, operation, construction and reconstruction of public highways," and for certain administrative costs. ORS 825.474(1).

> "Under [the weight-mile] tax, a trucking carrier pays a rate for each mile that its trucks operate on the state's public highways. The tax is based on the weight that the carrier declares to be the truck's maximum legal weight; the higher the declared weight, the higher the per-mile tax for that truck. * * * A carrier must maintain records of the declared weights of its trucks and the miles that they travel in order to make the required reports and calculate the amount of tax owed."

*American Trucking Assns., Inc. v. State of Oregon*, 193 Or App 185, 188-89, 90 P3d 15 (2004), *aff'd in part, rev'd in part on other grounds*, 339 Or 554, 124 P3d 1210 (2005) (footnote omitted).

Carriers generally report and pay the tax on a monthly basis. ORS 825.490(2). When practicable, ODOT audits those reports. ORS 825.490(3).

> "If [ODOT] is not satisfied with the report filed or amount of taxes or fees * * * paid to the state by any person, [ODOT] may, not later than three years after the report was filed or the taxes or fees were paid, make a proposed assessment of additional taxes or fees due from such person based upon any information available to the department."

*Id.* ODOT gives "written notice of such additional assessment" to "the person concerned." ORS 825.490(7). The person may petition ODOT for reassessment and request a hearing "within 30 days after service upon the person of notice." ORS 825.496(1).

In this case, ODOT notified petitioner in late 2011 that it would be auditing petitioner's "weight-mile" records for certain periods in 2009, 2010, and 2011, and it requested copies of the pertinent records. Petitioner provided those records to ODOT over the next few months. In February 2012, ODOT proposed a highway use tax assessment of roughly $350,000 based upon its review of petitioner's records, making adjustments for what ODOT determined to be "unreported mileage, weight adjustments and math discrepancies on reports." ODOT asked petitioner to submit any additional information that it wanted the auditor to consider, ultimately setting a deadline of April 10, 2012, for its receipt of that information. The record includes no indication that petitioner submitted any additional information by the April 10 deadline.

On April 26, 2012, ODOT sent a document titled "NOTICE OF HIGHWAY USE TAX ASSESSMENT - OFFICIAL BILLING" (the Notice and Billing) to petitioner by regular mail. That document reflected a total unpaid balance of over $353,000, including taxes, penalties, interest,

and other expenses. The Notice and Billing spelled out the method by which *petitioner could petition for reassessment*:

> "**PLEASE READ YOUR APPEAL RIGHTS ON THE BACK OF THIS DOCUMENT.** You have 30 days from the date of this notice to file a petition for reassessment * * *. Petitions for reassessment * * * MUST BE RECEIVED in Salem, Oregon, on or before 5 pm of the date the audit becomes final as shown above or your request will be denied."

(Boldface and capitalization in original.) The Notice and Billing further stated that the audit would become final on May 29, 2012. The back of the document provided more detail, explaining what information a petition for reassessment should include, where it should be submitted, and emphasizing that ODOT would need to receive any petition for reassessment on or before the date that the audit would become final.[1]

It is undisputed that petitioner did not submit a petition for reassessment by the May 29, 2012, deadline. Instead, on June 11, 2012, petitioner's office manager, Desiré Flack, e-mailed ODOT's auditor, apologizing for the delay in submitting information to ODOT and explaining that she had been out of the office. Two days later, Alban Lang, petitioner's vice president and CFO, e-mailed the auditor stating that Flack had just handed him the February 2012 audit report and asserting that Flack had never told him that she was working with ODOT on the audit. Lang acknowledged that "it is our internal communication issue" but requested leniency and additional time to produce more information.

A few days later, on June 19, Flack filed a petition for reassessment, challenging the amount of tax assessed and asserting that she had not received the official billing. On July 2, an ODOT audit manager responded by letter, stating that ODOT did not believe that the June 19 petition

---

[1] The notice thus appears to set two different deadlines, one that is 30 days from the date of the notice (at the latest, Monday, May 28, 2012, as the 30th day after the April 26 notice was Saturday, May 26) and one specified to be May 29, 2012. That discrepancy does not affect our analysis. For the sake of brevity, in the remainder of this opinion, we refer to the deadline as having been on May 29.

established good cause for failure to timely request a hearing and explaining that a final order would issue shortly.

On July 10, Lang sent ODOT a letter in which he set out the circumstances that he asserted established good cause for failure to timely request a hearing. Most of the points that Lang raised related either to the validity of the audit itself or to communications that occurred between petitioner and ODOT after the May 29, 2012, deadline for requesting reassessment had passed. In addition, however, Lang made the following two assertions:

"[Flack] and [the ODOT auditor] mis-communicated, and [Flack] thought she was waiting from [the auditor] to receive additional information to review the preliminary audit.

"[Flack] never received additional information and [the auditor] never initiated a billing, and *we never did receive billing for the audit.*"

(Emphasis added.)

ODOT issued its final order on July 18, 2012. That order includes a point-by-point response to Lang's July 10 letter, which ODOT apparently treated and accepted as another petition for reassessment. With respect to the two points from Lang's letter quoted above, the order states:

"The proposed audit was mailed to Petitioner at its address of record on February 23, 2012, requesting a response by March 23, 2012. On March 20, 2012, an email message requesting additional time to review the audit was received from [Flack]. She indicated that she had been on vacation and had not yet had a chance to review the audit. The email does not indicate a request for additional information from the auditor. The auditor responded on March 21, 2012, that he would be out of the office until April 10, and would need to receive any rebuttal information by April 10. No additional information was received by the auditor and the audit was sent for billing.

"On March 8, 2012, the auditor sent a follow-up letter to Petitioner indicating that he had not yet received a response to his letter of February 23, 2012. He reiterated the due date and advised Petitioner of appeal rights. On April 26, 2012, the Notice of Highway Use Tax Assessment—Official

Billing was properly addressed and mailed to [petitioner's] address of record last on file with [ODOT]. The Official Billing was not returned as undeliverable by the U.S. Postal Service."

In addition, the order describes what ODOT views as petitioner's "consistent pattern of late reporting" of its tax reports; the order also observes that petitioner had "significantly delayed in producing records for the audit." The order states that those events "further demonstrate[] Petitioner's pattern of untimely response to due dates."

The order goes on to explain that petitioner could "be granted relief from default" only by showing "good cause for [its] failure to file a timely request for reassessment," citing OAR 137-003-0528(1)(b)(A)[2] and quoting the definition of "good cause" found in OAR 137-003-0501(7).[3] The order then states simply: "Petitioner has not demonstrated good cause for [ODOT] to accept a late reassessment request." The order ends with a three-point conclusion:

### "CONCLUSION OF LAW

"1. The mailing of the Notice complied with the requirements of the law.

---

[2] OAR 137-003-0528(1) provides, in pertinent part:

"(1)(a) The agency must accept a properly addressed hearing request that was not timely filed [under circumstances not pertinent here].

"(b) The agency may accept any other late hearing request only if:

"(A) There was good cause for the failure to timely request the hearing, unless other applicable statutes or agency rules provide a different standard; and

"(B) The agency receives the request before the entry of a final order by default or before 60 calendar days after the entry of the final order by default, unless other applicable statutes or agency rules provide a different timeframe."

OAR 137-003-0528 is included in the Attorney General's Model Rules of Procedure for Contested Cases. With exceptions not pertinent here, ODOT has adopted those model rules. OAR 731-001-0005(1).

[3] OAR 137-003-0501(7) provides:

"For purposes of OAR 137-003-0501 to 137-003-0700, 'good cause' exists when an action, delay, or failure to act arises from an excusable mistake, surprise, excusable neglect, reasonable reliance on the statement of a party or agency relating to procedural requirements, or from fraud, misrepresentation, or other misconduct of a party or agency participating in the proceeding."

"2. Because the request for appeal or reassessment was not received within the time stated, Petitioner is in default.

"3. Petitioner has not made a showing of good cause for the failure to file the request in a timely fashion."

Accordingly, the final order dismissed the petition for reassessment.

## II. THE PARTIES' ARGUMENTS ON JUDICIAL REVIEW

Petitioner challenges the final order in this court, seeking "reversal of the order and remand for hearing on the issue of good cause for a tardy petition for reassessment." Of the several arguments that petitioner makes in support of that challenge, we address only two related contentions, which are dispositive. First, petitioner argues that ODOT disputed the factual assertions that petitioner raised in explaining why its requests for reassessment were late. In particular, petitioner asserts that the parties disputed whether petitioner ever received the Notice and Billing. Based on that assertion—and based on the parties' agreement that the petition for reassessment functioned as a request for hearing on the Notice and Billing in this case—petitioner argues that OAR 137-003-0528(3) required ODOT to hold a hearing on whether petitioner had good cause for missing the deadline for petitioning for reassessment.[4] Second, petitioner argues that the final order is flawed because it does not explain the reasoning that leads from its description of the facts to its conclusion that petitioner did not have good cause for missing the deadline for petitioning for reassessment. That argument amounts to a contention that the order is not supported by substantial reason.

---

[4] OAR 137-003-0528(3) provides:

"If the agency or another party disputes the facts contained in the explanation of why the request for hearing is late, the agency will provide a right to a hearing on the reasons why the hearing request is late. The administrative law judge will issue a proposed order recommending that the agency grant or deny the late hearing request."

In response, ODOT points out that petitioner never requested a hearing, under OAR 137-003-0528(3), on whether it had established good cause for missing the deadline for petitioning for reassessment. Accordingly, ODOT concludes, petitioner did not preserve its claim that ODOT erred by not holding such a hearing. In addition, ODOT contends that petitioner was not entitled to a hearing because ODOT "did not dispute the facts asserted in Mr. Lang's letter explaining why the petition for reassessment was late" and OAR 137-003-0528(3) therefore does not apply. In response to petitioner's argument that the order is not supported by substantial reason, ODOT argues that the order "is sufficient for judicial review" because it "separately addresses each and every one of petitioner's *** asserted bases for finding good cause."

## III. ANALYSIS

We begin with petitioner's argument that it was entitled to a hearing, under OAR 137-003-0528(3), on whether it had good cause for failing to timely file its petition for reassessment. As noted, ODOT contends that that argument is not preserved for judicial review. ODOT acknowledges that petitioner effectively requested a hearing on the Notice and Billing when Lang belatedly petitioned for reassessment in his July 10 letter. ODOT insists, however, that petitioner also was required to request a hearing *on good cause* for having made the request for a hearing on the Notice and Billing too late. We disagree.

Several aspects of OAR 137-003-0528(3) lead us to conclude that petitioner was not required to separately request a hearing on the good-cause question. We start with the text of the rule, which states that "the agency *will* provide a right to a hearing on the reasons why the hearing request is late." OAR 137-003-0528(3) (emphasis added). That mandatory language supports petitioner's contention that it was entitled to a hearing on good cause without requesting one. True, the rule refers to "a right to a hearing," not simply to "a hearing," and that reference could be understood to merely require agencies to provide hearings about good cause upon request, and not otherwise. But the rule does not set forth any deadline by which a petitioner

must request such a hearing; nor does any other provision of the rule contemplate a process by which a petitioner will request a hearing on the good-cause issue. We hesitate to read the rule to require a hearing request that it does not mention more explicitly.

Moreover, the rule must be considered in its context. OAR 137-003-0528(3) is triggered only after a petitioner has already taken two significant steps to alert an agency that it disagrees with, and seeks to challenge, some proposed agency action. First, the petitioner already will have requested (albeit belatedly) a hearing on the proposed action. Thus, the agency already is aware that the petitioner seeks to contest that action, and will not simply comply with whatever requirements the agency plans to impose on it (*e.g.*, paying a fine or fee, surrendering a license, etc.). Second, the petitioner will have submitted its "explanation of why the request for hearing [on the proposed agency action] is late." OAR 137-003-0528(3). Thus, the agency already is in a position, at that point, to assess whether it "disputes the facts contained in [that] explanation" and, therefore, to determine whether the petitioner is entitled to "a hearing on the reasons why the hearing request is late." *Id.* An additional hearing request would serve little purpose.

Finally, a petitioner may not be aware that the agency "disputes the facts contained in the [petitioner's] explanation of why the request for hearing is late" until the agency has issued its final order. That is the case here. The final order before us on judicial review is the July 18, 2012, order in which ODOT set out its point-by-point rejection of the excuses for late filing that Lang provided in his July 10 request for reassessment. That is the point at which ODOT may have "dispute[d] the facts contained in [petitioner's] explanation" and it was not until that point, therefore, that petitioner would have reason to believe that it was entitled to a hearing on the good-cause question under OAR 137-003-0528(3). Preservation principles do not apply when an alleged error appeared for the first time in the final order that is the subject of a petition for judicial review. *See SAIF v. Matt Jenkins Contracting*, 257 Or App 46, 60, 306 P3d 641 (2013) (cross-petitioner "was not required to take affirmative

action to preserve error that first arose when the agency issued its order"). For all of those reasons, we reject ODOT's argument that petitioner's argument under OAR 137-003-0528(3) is not preserved for our review.

We turn to the merits. As noted, ODOT argues that petitioner was not entitled to a hearing about whether it had good cause for belatedly filing its petition for reassessment because the agency did not dispute any of the factual assertions included in Lang's explanation of why that petition was late, *i.e.*, filed after the May 29 deadline. In particular, ODOT asserts that its order "does not dispute the assertion that petitioner failed to *receive* the Notice and Official Billing." (Emphasis in original.) Rather, ODOT argues, its conclusion that petitioner lacked good cause for the late reassessment request is based on ODOT's finding that the Notice and Billing was properly addressed and mailed to petitioner, and was not returned to ODOT as undeliverable. Because *that* finding is not in dispute, ODOT concludes, petitioner was not entitled to a hearing under OAR 137-003-0528(3).

The flaw in that argument is similar to one that we addressed in *Gordon v. Teacher Standards and Practices Comm.*, 265 Or App 722, 337 P3d 133 (2014). *Gordon* involved an order on reconsideration issued by the Teacher Standards and Practices Commission (TSPC) that rejected the petitioner's request for a late hearing and for reconsideration of a default order by which the TSPC had suspended the petitioner's teaching license. In her request for reconsideration of the default order, the petitioner had offered an explanation of why she had not requested a hearing on the proposed license suspension. The TSPC's order on reconsideration rejected that explanation, stating that it "was not persuaded by [the petitioner's] submissions in support of [her] late hearing request." *Id.* at 727. On judicial review, the petitioner argued that the TSPC should have held a hearing on the question of whether she had established good cause for having filed a late hearing request, citing OAR 137-003-0528(3). The TSPC responded that it was not required to hold a hearing under that rule "because it did not dispute the facts underlying [the] petitioner's explanation of why the request for hearing was late—it only concluded that the offered explanation was legally insufficient

to show circumstances beyond [the] petitioner's control." *Id.* at 728.

We vacated and remanded the TSPC's order on reconsideration because it was "not sufficient for us to determine whether the agency erred in failing to hold a hearing to consider [the] petitioner's late request for hearing." *Id.* We explained that the order could be read *either* to conclude that the petitioner's proffered excuses for the late filing were legally insufficient *or* to have indicated that the TSPC "disbelieved the facts underlying [the] petitioner's submissions." *Id.* Emphasizing that it is the agency's "responsibility to explain the reasoning for its order," we vacated the TSPC's order on reconsideration and remanded "the case to the TSPC for it to reconsider its order on reconsideration denying [the] petitioner's request for a late hearing." *Id.* at 729.

We reach a similar conclusion here. ODOT's order does not state whether it disputes the factual assertions that petitioner offered in its July 10 petition for reassessment or whether, instead, it concluded that those asserted facts do not establish good cause for the late reassessment request as a matter of law. Moreover, the order is ambiguous on that point. Although ODOT does not explicitly dispute petitioner's assertion that it never received the Notice and Billing, the order includes several statements suggesting that ODOT may have disbelieved that assertion (and others), including:

- ODOT's reference to the notice having been mailed to the correct address;

- ODOT's response to Flack's stated belief that "thought she was waiting * * * to receive additional information" about the audit from ODOT, in which ODOT observed that the pertinent e-mail it received from Flack requested "additional time to review the audit" but "does not indicate a request for additional information";

- ODOT's observation of "the consistent pattern of late reporting" by petitioner and its "untimely response to due dates."

Those statements lead us to conclude that ODOT may have rejected the late petition for reassessment for either of two reasons. On one hand, ODOT may have disbelieved petitioner's factual assertion that it did not receive the Notice and Billing—the document that triggered the 30-day timeline for any petition for reassessement. If ODOT did dispute that assertion, then the final order is flawed because ODOT should have held a hearing on whether petitioner had established good cause for filing its petition late, before concluding that it had not. OAR 137-003-0528(3). On the other hand, ODOT may have concluded (as it asserts to this court) that petitioner lacked good cause for filing the petition late even assuming that it never received the Notice and Billing. But if that is the case, the order still is flawed, as it simply states certain facts (like the mailing of the Notice and Billing to petitioner's address) and a legal conclusion (the absence of good cause), but does not provide "a rational explanation of how its factual findings lead to the legal conclusions on which the order is based." *Arms*, 268 Or App at 767. In particular, although the order quotes the definition of "good cause," it does not explain why—assuming the truth of the assertions in the petition for reassessment—petitioner's late filing was not excused because of "surprise," "excusable mistake," or "excusable neglect." By noting some points that the order does not address, we do not mean to imply any opinion about whether petitioner's assertions establish good cause. Rather, we make those observations simply to highlight the need for ODOT to explain its rationale for determining that petitioner did not have good cause for missing the 30-day deadline to petition for reassessment. Because the order does not include such an explanation, we agree with petitioner that the order is not supported by substantial reason.

To summarize: like the order in *Gordon*, this order does not give us a way "to determine * * * whether the agency was not persuaded [by the petitioner's explanation for the late hearing request] because it disbelieved the facts underlying petitioner's submissions or because it concluded that those facts, although undisputed, were legally insufficient." 265 Or App at 728. We therefore vacate the final order and remand for reconsideration of petitioner's late request for reassessment, with the same instruction we gave in *Gordon*:

"If the agency disputes the facts underlying petitioner's explanation of why the request for hearing was late, then it should hold a hearing to consider petitioner's late request for hearing, as required by OAR 137-003-0528(3). If [ODOT] does not dispute petitioner's asserted explanation but concludes that the explanation is legally insufficient, then it should explain why that is so."

*Id.* at 729.

Vacated and remanded for reconsideration of late petition for reassessment.